CMMC

AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
### for the
### Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Gold Samsung phone in clear case with pink hearts<br>Seizure No. 2021250600082701-008<br>("Target Device 3") | )<br>)<br>)<br>)<br>)<br>)    Case No.    '21 MJ02893 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A-3, incorporated herein by reference.

located in the _____Southern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC Sec. 952 and 960 | Importation of a Controlled Substance |
| 21 USC Sec. 963 | Conspiracy to Import |

The application is based on these facts:
See Attached Affidavit, incorporated herein by reference.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Jennifer Barnum, HSI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means).*

Date: _____July 16, 2021_____

_____
*Judge's signature*

City and state: San Diego, California

Hon. Barbara L. Major, United States Magistrate Judge
*Printed name and title*

## ATTACHMENT A-3

### PROPERTY TO BE SEARCHED

The following property is to be searched:

> Gold Samsung phone in clear case with pink hearts
> Seizure No. 2021250600082701-008
> ("Target Device 3")

The Target Device is currently in the possession of Homeland Security Investigations, located at 880 Front Street, San Diego, CA 92101.

## **ATTACHMENT B**
ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A-3 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below.  The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of June 15, 2021, up to and including July 15, 2021:

   a.   tending to indicate efforts to import controlled substances from Mexico into the United States;

   b.   tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

   c.   tending to identify co-conspirators, criminal associates, or others involved in importation of fentanyl, heroin, or some other federally controlled substance, from Mexico into the United States;

   d.   tending to identify travel to or presence at locations involved in the importation controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

   e.   tending to identify the user of, or persons with control over or access to, the Target Device; and/or

   f.   tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960 and 963.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**AFFIDAVIT**

I, Special Agent Jennifer Barnum, being duly sworn, hereby state as follows:

**INTRODUCTION**

1.    I submit this affidavit in support of an application for a warrant to search the following electronic device(s), (Collectively, the "Target Devices"):

Gray I-phone in black case

Seizure No. 2021250600082701-008

("Target Device 1")

Blue I-phone with cracked back

Seizure No. 2021250600082701-008

("Target Device 2")

Gold Samsung phone in clear case with pink hearts

Seizure No. 2021250600082701-008

("Target Device 3")

as further described in Attachment A-1, A-2, and A-3, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Sections 952, 960, and 963 as further described in Attachment B. The requested warrant relates to the investigation and prosecution of Rafael HERNANDEZ Jr. ("Defendant") for importing approximately 12.58 kilograms (27.73 pounds) of fentanyl, and 8.22 kilograms (18.12 pounds) of heroin, from Mexico into the United States.  The Target Devices are currently in the custody of Homeland Security Investigations and located at 880 Front Street, San Diego, CA 92101.

2.    The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the

Target Devices, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

## BACKGROUND

3.    I have been employed as a Special Agent with Homeland Security Investigations (HSI) since March 2003. I am currently assigned to the HSI Office of the Special Agent in Charge, in San Diego, California. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia.

4.    During my tenure with HSI, I have participated in the investigation of various narcotics trafficking organizations involved in the importation and distribution of controlled substances into and through the Southern District of California. Through my training, experience, and conversations with other law enforcement officers experienced in narcotics trafficking investigations, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico at Ports of Entry.

5.    I am aware that it is common practice for narcotics traffickers to work in concert utilizing cellular telephones. A common tactic utilized by narcotics traffickers is to smuggle controlled substances into the United States from Mexico by concealing the controlled substances in vehicles or on persons entering the United States at Ports of Entry such as the San Ysidro Port of Entry and the Otay Mesa Port of Entry. With respect to the importation of narcotics in this manner, I am aware that narcotics traffickers in Mexico frequently communicate with the individual responsible for importing the concealed narcotics into the United States. These communications can occur before, during and after the narcotics are imported into the United States. For example, prior to the importation, narcotics traffickers frequently communicate with the transporter(s) regarding arrangements and preparation for the narcotics importation. When the importation is underway, narcotics traffickers frequently communicate with the transporter(s) to remotely monitor the progress of the narcotics, provide instructions and warn accomplices about law

1  enforcement activity.  When the narcotics have been imported into the United States,
2  narcotics traffickers may communicate with the transporter(s) to provide further
3  instructions regarding the delivery of the narcotics to a destination within the United States.

4      6.    Based upon my training, experience, and consultations with law enforcement
5  officers experienced in narcotics trafficking investigations, and all the facts and opinions
6  set forth in this affidavit, I am aware that cellular telephones (including their SIM card(s))
7  can and often do contain electronic evidence, including, for example, phone logs and
8  contacts, voice and text communications, and data, such as emails, text messages, chats
9  and chat logs from various third-party applications, photographs, audio files, videos, and
10 location data. This information can be stored within disks, memory cards, deleted data,
11 remnant data, slack space, and temporary or permanent files contained on or in the cellular
12 telephone. Specifically, searches of cellular telephones of individuals involved in the
13 importation of narcotics may yield evidence:

    a.    tending to indicate efforts to import controlled substances from Mexico
          into the United States;

    b.    tending to identify accounts, facilities, storage devices, and/or services–
          such as email addresses, IP addresses, and phone numbers–used to
          facilitate the importation of controlled substances from Mexico into the
          United States;

    c.    tending to identify co-conspirators, criminal associates, or others involved
          in importation of controlled substances from Mexico into the United
          States;

    d.    tending to identify travel to or presence at locations involved in the
          importation of controlled substances from Mexico into the United States,
          such as stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to,
          the Target Devices; and/or

    f.    tending to place in context, identify the creator or recipient of, or establish
          the time of creation or receipt of communications, records, or data involved
          in the activities described above.

**FACTS SUPPORTING PROBABLE CAUSE**

7.      On July 15, 2021, at approximately 3:32 PM, Rafael HERNANDEZ Jr., ("HERNANDEZ Jr."), a United States Citizen, applied for entry into the United States from Mexico through the Otay Mesa Port of Entry in vehicle lane #5. HERNANDEZ Jr. was the driver, sole occupant, and registered owner of a 2019 Toyota Camry ("the vehicle") bearing California license plates.

8.      A Canine Enforcement Team was conducting pre-primary operations when the Human and Narcotic Detection Dog alerted to the rear area of the vehicle.

9.      A Customs and Border Protection Officer received two negative Customs declarations from HERNANDEZ Jr. HERNANDEZ Jr. stated he was crossing the border to go to Santa Ana, California.

10.     A CBPO operating the Z-Portal X-Ray machine detected anomalies in the rear wheel area of the vehicle.

11.     Further inspection of the vehicle resulted in the discovery of 34 total packages concealed in an aftermarket compartment, behind the rear bumper of the vehicle.  27 of the packages contained a substance, a sample of which field tested positive for the characteristics of fentanyl, with a total approximate weight of 12.58 kilograms (27.73 pounds); 7 of the packages contained a substance, a sample of which field tested positive for the characteristics of heroin, with a total approximate weight of 8.22 kilograms (18.12 pounds).

12.     HERNANDEZ Jr. was placed under arrest at approximately 4:45 PM.

13.     HERNANDEZ Jr. was arrested and charged with a violation of Title 21, United States Code, 952 and 960, importation of a controlled substance.

14.     The Target Devices were found in Defendant's vehicle and were seized at the time of arrest. During the interview, Defendant was shown the Target Devices and

1 identified all Target Devices, except Target Device 3, as his.

2    15.    Based upon my experience and training, consultation with other law
3 enforcement officers experienced in narcotics trafficking investigations, and all the facts
4 and opinions set forth in this affidavit, I believe that telephone numbers, contact names,
5 electronic mail (email) addresses, appointment dates, messages, pictures and other digital
6 information are stored in the memory of the Target Devices.  In light of the above facts and
7 my experience and training, there is probable cause to believe that Defendant was using
8 the Target Devices to communicate with others to further the importation of illicit narcotics
9 into the United States.  Further, in my training and experience, narcotics traffickers may be
10 involved in the planning and coordination of a drug smuggling event in the days and weeks
11 prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will
12 continue to attempt to communicate with a defendant after their arrest to determine the
13 whereabouts of the narcotics. Based on my training and experience, it is also not unusual
14 for individuals, such as Defendant, to attempt to minimize the amount of time they were
15 involved in their smuggling activities, and for the individuals to be involved for weeks and
16 months longer than they claim. Accordingly, I request permission to search the Target
17 Devices for data beginning on June 15, 2021, up to and including July 15, 2021.

18                                      **METHODOLOGY**

19    16.    It is not possible to determine, merely by knowing the cellular telephone's
20 make, model and serial number, the nature and types of services to which the device is
21 subscribed, and the nature of the data stored on the device. Cellular devices today can be
22 simple cellular telephones and text message devices, can include cameras, can serve as
23 personal digital assistants and have functions such as calendars and full address books and
24 can be mini-computers allowing for electronic mail services, web services and rudimentary
25 word processing. An increasing number of cellular service providers now allow for their
26 subscribers to access their device over the internet and remotely destroy all of the data
27 contained on the device. For that reason, the device may only be powered in a secure
28 environment or, if possible, started in "flight mode" which disables access to the network.

1  Unlike typical computers, many cellular telephones do not have hard drives or hard drive
2  equivalents and store information in volatile memory within the device or in memory cards
3  inserted into the device. Current technology provides some solutions for acquiring some of
4  the data stored in some cellular telephone models using forensic hardware and software.
5  Even if some of the stored information on the device may be acquired forensically, not all
6  of the data subject to seizure may be so acquired. For devices that are not subject to forensic
7  data acquisition or that have potentially relevant data stored that is not subject to such
8  acquisition, the examiner must inspect the device manually and record the process and the
9  results using digital photography. This process is time and labor intensive and may take
10  weeks or longer.

11       17.    Following the issuance of this warrant, I will collect the Target Devices and
12  subject them to analysis. All forensic analysis of the data contained within the telephone
13  and its memory cards will employ search protocols directed exclusively to the
14  identification and extraction of data within the scope of this warrant.

15       18.    Based on the foregoing, identifying and extracting data subject to seizure
16  pursuant to this warrant may require a range of data analysis techniques, including manual
17  review, and, consequently, may take weeks or months. The personnel conducting the
18  identification and extraction of data will complete the analysis within ninety (90) days of
19  the date the warrant is signed, absent further application to this court.

20                 **PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE**

21       19.    Law enforcement has not previously attempted to obtain the evidence sought
22  by this warrant.

23                         **CONCLUSION**

24       20.    Based on the facts and information set forth above, I submit there is probable
25  cause to believe that a search of the Target Devices will yield evidence of Defendant's
26  violations of Title 21, United States Code, Sections 952, 960 and 963. Accordingly, I
27  request that the Court issue a warrant authorizing law enforcement to search the items
28

1  described in Attachment A-1, A-2, and A-3, and seize the items listed in Attachment B
2  using the above-described methodology.

3

4  I swear the foregoing is true and correct to the best of my knowledge and belief.

5

6  _____
7  Special Agent Jennifer Barnum
   Homeland Security Investigations

8

9  Sworn and attested to under oath by telephone, in accordance with Federal Rule of
   Criminal Procedure 4.1, this 16th day of July, 2021.

10

11  _Barbara L Major_
12  Honorable Barbara L. Major
13  United States Magistrate Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28